# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUANITA YVON BRIDGES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1565 |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | Judge Cathy Bissoon |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 8) will be denied, and Defendant's Motion for Summary Judgment (Doc. 10) will be granted.

Plaintiff Juanita Yvon Bridges ("Bridges") initially applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on August 15, 2006. (R. at 14). The claims proceeded through the administrative process until August 19, 2008, when they were denied in a decision rendered by an administrative law judge. (R. at 14, 190-191). Bridges responded to that decision by filing a request for review with the Appeals Council. (R. at 14). She protectively filed new applications for DIB and SSI benefits on September 8, 2009, alleging the existence of a disability beginning on July 11, 2007. (R. at 141, 145, 190). On February 16, 2010, Pennsylvania's Bureau of Disability Determination ("Bureau") denied the new applications. (R. at 74, 80, 86, 92). Bridges timely requested an administrative hearing on March 10, 2010. (R. at 98-100). The Appeals Council denied her request for review on April 27, 2010, thereby making the administrative law judge's decision the "final decision" of the

1

Commissioner of Social Security ("Commissioner") pertaining to the original applications. (R. at 14). Bridges sought judicial review of that decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's decision was affirmed in a memorandum opinion and order dated December 21, 2010. *Bridges v. Astrue*, Civil Action No. 10-863, 2010 U.S. Dist. LEXIS 135100 (W.D.Pa. Dec. 21, 2010).

On March 31, 2011, the hearing requested by Bridges was held before Administrative Law Judge ("ALJ") Douglas Cohen. (R. at 36). Bridges, who was represented by counsel, appeared and testified at the hearing. (R. at 40-64, 67-68). Fred A. Monaco ("Monaco"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. (R. at 44, 64-66). In a decision dated May 11, 2011, the ALJ determined that Bridges was not "disabled" within the meaning of the Act. (R. at 11-31).

On July 7, 2011, Bridges sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 9-10). The Appeals Council denied the request for review on August 24, 2012, thereby making the ALJ's decision the Commissioner's "final decision" in this case. (R. at 1). Bridges commenced this action on October 27, 2012, seeking judicial review of the Commissioner's decision. (Docs. 1 & 2). Bridges and the Commissioner filed motions for summary judgment on March 25, 2013, and April 24, 2013, respectively. (Docs. 8 & 10). The parties' cross-motions for summary judgment are now ripe for disposition.

Although Bridges listed July 11, 2007, as her alleged onset date, the administrative decision denying her earlier claims was given *res judicata* effect. (R. at 14-15). The ALJ proceeded to consider whether Bridges had become "disabled" on or after August 20, 2008. (R. at 15). It was determined that, as of that date, Bridges had been suffering from a back disorder,

obesity, valvular disease, hypertension with mild left ventricular hypertrophy, and pain in her right hip. (R. at 17). These impairments were deemed to be "severe" under the Commissioner's regulations. (R. at 17-19); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ also concluded that, as of January 28, 2010, Bridges had been inflicted with "the additional severe impairment of depression." (R. at 17).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Bridges's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb (ramps/stairs only), balance, stoop, crouch, crawl, and kneel. She cannot engage in work around hazards, *e.g.*, no unprotected heights, moving machinery, or commercial driving. As of January 28, 2010, the claimant was limited to simple routine repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes.

(R. at 21). Bridges had "past relevant work" experience as a general clerk and clerk receptionist. (R. at 64). Monaco respectively classified those positions as "semi-skilled" and "unskilled" jobs at the "sedentary" level of exertion. (R. at 44). He testified that the physical limitations contained within the ALJ's residual functional capacity assessment would not preclude an individual from performing the duties of either position. (R. at 64-65). Monaco further stated that while the limitations applicable as of January 28, 2010, would prevent an individual from working as a general clerk, they would not compromise his or her ability to work as a clerk receptionist. (R. at 65). The ALJ ultimately denied Bridges's claims on the ground that she could return to her past relevant work. (R. at 28-31).

Bridges was born on July 4, 1954, making her fifty-three years old on her alleged onset date and fifty-six years old on the date of the ALJ's decision. (R. at 29, 141, 145). During the

3

relevant period of time, she was initially classified as a "[p]erson closely approaching advanced age." 20 C.F.R. §§ 404.1563(d), 416.963(d). Under the Commissioner's regulations, a claimant falls within a particular age category one day before his or her triggering birthday. 20 C.F.R. §§ 404.102, 416.120(c)(4). Consequently, Bridges became a "[p]erson of advanced age" on July 3, 2009. She had the equivalent of a high school education and an ability to communicate in English. (R. at 29, 40, 181, 187); 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ alternatively found that Bridges had been capable of working as a document preparer, telephone service employee, or hand packer prior to July 3, 2009. (R. at 29-30). Monaco's testimony established the existence of those jobs in the national economy. (R. at 65-66). As of Bridges's fifty-fifth birthday, Medical-Vocational Rule 202.06 compelled a finding that the economy did not offer jobs consistent with her occupational profile. 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2, Rule 202.06. That finding was inconsequential, since an individual who can return to his or her past relevant work is not "disabled" within the meaning of the Act regardless of whether jobs consistent with his or her residual functional capacity exist in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 21-26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). Accordingly, the ALJ denied Bridges's claims in all respects. (R. at 30-31).

In support of her request for review, Bridges submitted documentary evidence to the Appeals Council that had never been presented to the ALJ.[1] (R. at 5-6, 243). The Act authorizes judicial review only over a "final decision" of the Commissioner. *Califano v. Sanders*, 430 U.S. 99, 108, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). A federal court has no jurisdiction to entertain a challenge to a decision by the Appeals Council denying a claimant's request for review. *Matthews v. Apfel*, 239 F.3d 589, 594

---

[1] On December 6, 2011, Bridges attempted to amend her alleged onset date to July 4, 2009. (R. at 245).

4

(3d Cir. 2001). When the Appeals Council denied Bridges's request for review, the ALJ's decision became the Commissioner's "final decision" in this case. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). The sixth sentence of § 405(g) provides that a reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The standards governing the propriety of a sentence-six remand are firmly established. *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Since Bridges does not move for a sentence-six remand, the Court's review is limited to the evidence that was before the ALJ at the time of his decision.[2] *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011)(holding that a claimant had not satisfied the "good cause" requirement of sentence six because she had failed to explain her reasons for not procuring the relevant evidence at a time when it could have been considered by an administrative law judge).

On January 7, 2010, Dr. Joseph Kalik performed a consultative physical examination of Bridges in connection with her applications for DIB and SSI benefits. (R. at 343-351). After completing the examination, Dr. Kalik reported that Bridges could frequently lift or carry objects weighing up to twenty pounds and occasionally lift or carry objects weighing up to twenty-five pounds. (R. at 349). Bridges's sitting, standing, walking, pushing and pulling abilities were deemed to be unlimited. (R. at 349). No additional restrictions were found. (R. at 349-350). Dr. Kalik essentially determined that Bridges was physically capable of performing a full range

---

[2] Bridges relies on *Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005), for the proposition that the Court should consider the entire record, including the evidence submitted to the Appeals Council, in determining whether the Commissioner's "final decision" is supported by substantial evidence. (Doc. 9 at 16). The rule adopted in *Higginbotham*, however, is not the governing law in the Third Circuit. *Higginbotham*, 405 F.3d at 335-336; *Matthews v. Apfel*, 239 F.3d 589, 592-595 (3d Cir. 2001).

5

of "light" work.³ The ALJ gave Bridges the "maximum benefit of the doubt" in limiting her to a subset of "light" work involving only occasional postural maneuvers and no exposure to workplace hazards. (R. at 21, 25).

Bridges's mental abilities and limitations were assessed by Dr. Robert P. Craig during a consultative evaluation performed on January 28, 2010. Dr. Craig opined that Bridges's "physical problems" were causing her to suffer from "mild-to-moderate depression and anxiety." (R. at 357). Nonetheless, he indicated that Bridges's mental impairments did not limit her ability to perform work-related tasks. (R. at 359). Specifically, Dr. Craig reported that Bridges's mental impairments did not affect her abilities to understand, remember and carry out instructions or respond appropriately to supervision, co-workers and work pressures in a typical work setting. (R. at 359).

Dr. Edward Jonas, a non-examining psychological consultant, opined on February 9, 2010, that Bridges had no "severe" mental impairments. (R. at 364). In rendering that opinion, Dr. Jonas accorded "appropriate weight" to the findings of Dr. Craig's consultative evaluation. (R. at 376). The ALJ concluded that, as of January 28, 2010, Bridges was precluded from working in a fast-paced production environment and limited to the performance of simple, routine, repetitive tasks involving only simple work-related decisions and relatively few workplace changes. (R. at 21). The additional limitations were attributed to Dr. Craig's determination that Bridges was suffering from depression. (R. at 27).

On March 22, 2011, Bridges started to attend mental health counseling sessions with Jill Zikmund ("Zikmund"). (R. at 485). In a letter dated April 15, 2011, Zikmund stated that

---

³ "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Bridges was "unable to fulfill employment requirements" involving "interaction with others or any degree of focus and attention." (R. at 485). The ALJ afforded "little weight" to Zikmund's letter because it was not accompanied by "actual treatment notes" documenting Bridges's symptoms. (R. at 27). At the hearing, Bridges testified that she worked twenty hours per week as a computer instructor for senior citizens. (R. at 40-41). The ALJ pointed out that Bridges's performance of that duty required her to interact with others. (R. at 27). Part-time work activity that does not amount to "substantial gainful activity" under the Commissioner's regulations may nevertheless suggest that a claimant is capable of maintaining a full-time job. 20 C.F.R. §§ 404.1571, 416.971. In any event, the findings articulated by Dr. Craig and Dr. Jonas provided the ALJ with a logical basis for rejecting the functional limitations described by Zikmund. *Brown v. Astrue*, 649 F.3d 193, 196-197 (3d Cir. 2011); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Bridges does not mount a clear challenge to the ALJ's residual functional capacity assessment. Instead, she attempts to establish the existence of an ambiguity in the ALJ's decision. (Doc. 9 at 16-19). Contrary to Bridges's belief, the ALJ's decision is firmly grounded in the law. A claimant's residual functional capacity is only determined once. *Her v. Commissioner of Social Security*, 203 F.3d 388, 391-392 (6th Cir. 1999). The *same* residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(5). The Commissioner's burden of production at the fifth step relates only to evidence establishing the existence of jobs in the national economy consistent with the claimant's vocational profile. *Heckler v. Campbell*, 461 U.S. 458, 467-470, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir.

2003). The claimant's abilities and limitations do not change from one step to the next. *Her*, 203 F.3d at 391-392.

The fact that Bridges's residual functional capacity changed on January 28, 2010, is of no dispositive significance. (R. at 21, 28-29). Bridges had previously worked as a general clerk and clerk receptionist. (R. at 64). The ALJ's first hypothetical question described Bridges's limitations during the earlier portion of the disputed period. (R. at 21, 64). Monaco testified that such an individual could work as *either* a general clerk *or* a clerk receptionist. (R. at 64). The ALJ's second hypothetical question incorporated the mental limitations resulting from the onset of Bridges's depression. (R. at 21, 65). Monaco responded to that question by stating that while the described individual could not perform the "semi-skilled" duties expected of a general clerk, he or she could still maintain a job as a clerk receptionist. (R. at 65). In light of Monaco's testimony, Bridges was deemed to be capable of working as a clerk receptionist during the entire period of time at issue in this case. (R. at 28-29).

Monaco testified that an individual with the abilities and limitations described by the ALJ could work as a document preparer, telephone service employee, or hand packer. (R. at 65-66). That testimony provided an evidentiary basis for the ALJ's alternative finding at the fifth step of the sequential evaluation process. (R. at 29-31). The alternative finding applied only to the period of time preceding Bridges's fifty-fifth birthday, since a finding of disability would have been directed by Medical-Vocational Rule 202.06 during the subsequent period of time. (R. at 29-31). The fact that Bridges would have otherwise been "disabled" at the *fifth* step as of July 3, 2009, does not undermine the ALJ's decision at the *fourth* step. As noted earlier, a claimant who is able to return to his or her past relevant work is not "disabled" under the Act regardless of whether that work (or other work consistent with his or her residual functional capacity) exists in

8

the national economy. *Thomas*, 540 U.S. at 21-26. The Medical-Vocational Rules relate only to "the types and numbers of jobs" existing in the national economy. *Campbell*, 461 U.S. at 468. They simply have no application to a claimant who remains capable of performing his or her past relevant work. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000)(recognizing that the Commissioner bears the burden of production only at the "last step" of the analysis).

Bridges intimates that she had functional limitations extending beyond those found by the ALJ.[4] (Doc. 9 at 16-19). In any event, the ALJ was not required to accept every limitation *alleged* by Bridges. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Although the ALJ was required to give serious consideration to Bridges's subjective complaints, he was not required to credit them in every conceivable respect. *Chandler*, 667 F.3d at 363. Every limitation contained within the ALJ's residual functional capacity assessment was conveyed to Monaco at the hearing. (R. at 21, 64-66). The residual functional capacity finding is itself "supported by substantial evidence." 42 U.S.C. § 405(g). The portions of Monaco's testimony pertaining to a *hypothetical individual* with additional limitations did not preclude a determination that *Bridges* was still able to work as a clerk receptionist. *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987). Since all of Bridges's credibly established limitations were made known to Monaco, his testimony provided an adequate basis for the ALJ's decision. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008). The arguments advanced by Bridges provide no basis for setting that decision aside. The Commissioner's decision denying

---

[4] The tenor of Bridges's argument suggests that she is relying on evidence submitted to the Appeals Council in support of her request for review. (Doc. 9 at 16). For the reasons discussed earlier, that evidence cannot be considered at this time. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011). Bridges remained insured for Title II benefits beyond the date of the ALJ's decision. (R. at 17, 40). If she believes that the evidence presented to the Appeals Council would warrant a finding of disability, she can file new applications for DIB and SSI benefits.

Bridges's applications for DIB and SSI benefits is supported by substantial evidence and will be affirmed.

## II. ORDER

Plaintiff's Motion for Summary Judgment (**Doc. 8**) is **DENIED**, Defendant's Motion for Summary Judgment (**Doc. 10**) is **GRANTED**, and the decision of the Commissioner of Social Security is **AFFIRMED**.

IT IS SO ORDERED.

                                                  s/Cathy Bissoon
                                                  Cathy Bissoon
                                                  United States District Judge

cc:     All counsel of record